Number 17-6122, Randy Roberts v. Mars Petcare US Inc. Argument not to exceed 15 minutes per side. Mr. Barrett, you may proceed for the appellant. Thank you very much. Good morning, your honors. My name is Charles Barrett, and I'm from Neil and Harwell here in Nashville, and I'll be arguing for the plaintiff, Randy Roberts. I promise I'll be short in my remarks. I do not plan on going over each and every issue in the briefing, but instead I'll focus on what, and address what I think are the primary issues. I will start with the dual corporate citizenship issue. That is the, quote unquote, important related CAFA question, as this court described it in the order granting our petition. We don't think this is really a complex issue, but essentially it is, the question is what to do with a corporation's, quote unquote, dual citizenship for jurisdictional purposes. Our complaint is straightforward. We alleged a Tennessee state class for violation of Tennessee law, unjust enrichment, and violation of the Trade Practices Act with a Tennessee rep. The defendant, Mars, is a citizen of Tennessee, where it keeps its principal place of business, and Delaware, where it's incorporated. Under the Class Action Fairness Act of 2005, it says that there is minimal diversity exists where, quote, any member of the class of plaintiffs is a citizen of a state different from any defendant, end quote. We think the district court wrongly concluded that to establish minimal diversity under the law, you have to rely on its Delaware citizenship. The district court found, really stated simply, that minimal diversity exists where you have a plaintiff and defendant have different citizenships, even if they have the same citizenship. We think that's wrong. We think the Tennessee citizenship of Mars means that, I'm sorry, we think that the class of plaintiffs, which is Tennessee, and the Tennessee citizenship of Mars means they are not different. This is Judge Sutton, what about the point that, you know, the purpose of CAFA was to make it easier to get to federal court with these large class actions. That seemed to be what was motivating Judge Reeves, and, you know, I think she has a point there that that was the purpose of the statute. It absolutely was, and I wouldn't question that at all. Anybody that has ever dealt with class actions, even before CAFA now, knows the history behind CAFA. The purpose of CAFA was to bring a lot of state court cases into federal court. But CAFA didn't, it did change the law drastically, but it didn't do everything. CAFA was designed to bring cases, to make sure that class actions ended up in federal court and out of random state courts that either didn't have, had little connection to the parties or the facts of the case. That was the stated goal of CAFA, everyone knows it, and it certainly worked. I mean, I don't know what the numbers are, but the percentages of cases that are now in state court is small, much smaller than it was before CAFA. Counsel, this is a multiparty, but to go back to Judge Sutton's question, if the purpose of CAFA was to increase these, and you've made the point now that it has in fact done that, what Judge Reeves was looking at from her perspective was, you, it points calm residents and calm citizens, but you said everyone who purchased dog food in Tennessee or whatever it was, and the defendant makes the point there's eight neighboring states of Tennessee or something to that effect, they also make the point that Royal Cannon should have been the real defendant in this case, and so it looks like gamesmanship and that's what CAFA's purpose was, to avoid that gamesmanship and preventing corporations from removing these cases. So why isn't this the quintessential case? And that's why Judge Reeves did what she did. Because CAFA has limits. It was specifically designed to get a lot of cases out of state court, but the limits of it were specifically put in the statute. When you have a case where you have a Tennessee class with a Tennessee rep under Tennessee law against a Tennessee defendant, that is specifically designed to stay in state court. I mean, CAFA wasn't, it didn't say go find all the national, you know, all the class actions with a national feel and grab jurisdiction. It simply said, okay, you know, here's the goal, here's how you reach that goal, and gave the specific steps. And you're hoping that we just follow the rules. While I certainly understand, you know, Judge Reeves, you're talking about the national flavor, that's not the basis for jurisdiction, that's just the underlying purpose of CAFA. You have to follow the specific guidelines set forth in the statute, and that's what we did. What happens to this case if it turns out that Royal Cannon really was the manufacturer of the food? Isn't it odd to have a price-fixing conspiracy without the manufacturer? Not really. I mean, we think that we've got the right defendant in the case, and if that's wrong, they can move to dismiss it and, you know, maybe we'd lose, but we think we've got the right defendant. We think Royal Canine is a brand, and we think we win that. But the bad actors, as we've alleged in the case, are all the co-conspirators. And Royal Canine is not one of them. They're just underneath the overall Mars umbrella. I mean, it's just a corporate shill game as far as we see it. Doesn't Mars, the company you have alleged, Mars Pet Care, allege that they're sister corporations and they really are the principal? If they go back to state court and join Mars under Rule 19, would you agree it's removable at that point? No. If we go back to state court and they bring a party into the case, no. I think you remove it. You'd look at the complaint as it was filed, and I believe the law is pretty clear that you can't bring a party in and create diversity jurisdiction. What if they get dismissed, Mars Pet Care gets dismissed, and Royal Canine gets added? Couldn't Royal Canine remove it at that point? I'm sorry, I couldn't hear the question. Couldn't Royal Canine remove it at the point they get added and Mars Pet Care gets dismissed if that's what a state court were to do? I do not know the answer to that. I just haven't thought about that particular twist on it. We do not plan on suing Royal Canine. That's not our litigation strategy at the moment. We think we've got the right defendant in there, but it turns out we're wrong. They'll move to dismiss it, and I'm sure they will explain why we are wrong. But that's not the point. The issue right now is jurisdiction. Did I answer the question? I'm not sure I did. Yes, thank you. Okay. Now, just to make a few quick points. All the case law, we think the district court was wrong for all the reasons in our brief, but first and foremost, the district court is alone in her reading of CAFA. All the case law, including the 11th and the 4th Circuit, and a lot of district courts and commentators say that her reading of CAFA is incorrect. The second thing, CAFA did change a lot, but it didn't change everything. It didn't change the way the 6th Circuit views dual citizenship as for diversity purposes. Yes, it changed how you get into federal court, but it didn't do anything with dual citizenship. The law is simply the same as it was before CAFA. By that, I mean let's say there were no class allegations in our case. We just simply had a Tennessee plaintiff versus Marsh Petcare, and they're Tennessee and Delaware, and we filed in state court. The 6th Circuit law is clear to me that there would be no diversity there. They couldn't rely on Delaware to remove it. Well, CAFA didn't change that. I mean, CAFA did not change that, and so that law is still good. We cited cases in our brief. I admit those are not CAFA cases because this court hadn't ruled on it. I will say we're allowed to address the national nature of the case. Again, you go with what Congress wrote, not just the goal of the statute. You go with, it has limits, and we look at the Sprint case and the Hannaford Brothers case that we cite in our brief. And finally, we're allowed to plead a state case in state court. You look at the Johnson case in the 4th Circuit and the Sprint case in the 7th Circuit. They specifically say, you know, you can plead a state class. There's nothing wrong with that. And even the Freeman case from this court, which, you know, the way the plaintiff had limited the amount of controversy to right under $5 million, even the court there said they recognize that plaintiffs can avoid removal under CAFA by limiting the damages they seek. If they limit it, not broaden it like they did in that case. I don't think there's anything different here. Instead of limiting the damages, we just limited our class to a state class. So I'm 15 seconds over. Thank you for listening to me. All right, Mr. Wang. Good morning. Al Wang on behalf of Defendant Appellee Mars Petcare. Your Honor, as a mayor of this court, this case bears all the hallmarks of an interstate class action. It involves a Tennessee resident buying a product made by... Mr. Wang, you're trailing off at the end, and we are having... I'm having a difficult time hearing you. So if you can keep your voice up throughout each sentence. Sure, sure. Thank you, Judge Gibbons. Your Honor, and may it please the court, this case bears all the hallmarks of an interstate class action. It involves a Tennessee resident buying a product made by a company neither based in nor incorporated in Tennessee and alleging a nationwide scheme to raise pet prices by manufacturers, retailers and veterinarians. We know from this court's precedent and U.S. Supreme Court precedent that Congress enacted CAFA precisely to keep these sorts of cases, class actions with interstate ramifications, in federal court, not in state court. But in order to duck federal jurisdiction, plaintiff here brought suit against Mars Pet Care. Plaintiff didn't buy a Mars Pet Care product, and the district court... Counsel, counsel, this is Judge Sutton. Why does the price-fixing conspiracy require you to include the retailer or the manufacturer? I mean, the price-fixing can be done at a different level. I mean, if you have price-fixing with toothpaste, you don't have to sue Walmart, and you don't even have to sue the manufacturer necessarily. I mean, the point is to allege price-fixing, and why aren't they allowed to sue Mars Pet Care? Well, Your Honor, a couple of responses there. I think the Ward v. Apple case in the Ninth Circuit is instructive, and you're absolutely right that there's no requirement to sue every member of the conspiracy. No, no, no, no. No, just to be clear, it's not even necessarily every member of the conspiracy. Just...you can have a vertical chain, but not every step in the chain is part of a price-fixing conspiracy. I mean, it can be one CEO to another CEO in one phone call. Let's raise prices. Well, the others aren't even part of the conspiracy. Certainly, Your Honor. Well, we think that there's no vertical chain here. As we've noted in our briefing, Mars Pet Care and Royal Canin are, in fact, sister corporations, and Royal Canin is a separate company. No one disputes that. Royal Canin is a company based in Missouri and incorporated in Delaware, and it produced the product. Mr. Wang, this is Judge DeParle. Why do they have to sue Royal Canin? I mean, you're essentially making the argument in your brief that as part of the jurisdictional analysis, the district court should perform a Rule 19 analysis, but Rule 19, as the plaintiffs point out, presumes we have jurisdiction in the first place. That's correct, Your Honor, and, Judge DeParle, I think Rule 19 involves a two-part test, and I think we would say that you would look at the Rule 19 inquiry because Royal Canin is a necessary party, and it's... But you only look at that after. I mean, what you're essentially arguing for is a new doctrine, which is something like fraudulent non-joinder, but you only look at that after you have jurisdiction. So if you don't have jurisdiction, then the proper place to join a necessary and indispensable party would be in state court. Well, Your Honor, we recognize that, as you're saying, there's not a case that's on all fours with the current case, and we are asking this court to sort of apply fraudulent joinder and Rule 19 in a unique aspect. That said, I think that there are sort of alternative bases. There are two other bases upon which there is federal jurisdiction. One, as the district court pointed out, the citizenship of Mars Pet Care. Mars Pet Care is a Delaware citizen, and as a Delaware citizen, it has citizenship different than at least one... But it's also a Tennessee citizen, and if we applied your rationale, then all diversity citizenship would be up in the air because the language of the statute for just pure jurisdiction also says citizens of different states. And I don't know, have you come across any cases that stand for the proposition that the district court espoused, or you espoused to the district court, and she accepted not of the same state in even just a plain diversity case? Well, Your Honor, we recognize that the district court's position went against the tide of the other authority that's ruled on this issue. But the district court was deciding an issue of first impression within the Sixth Circuit. We think it did exactly what it was supposed to do. It looked at the text of the statute. It thought that the text was clear, and it applied that to the case at hand. I think the cases... Do you think... I want to hear you defend her textual analysis. I mean, you've got 1332c1, which is still there. You have the tradition of looking at, you know, both citizenships of a corporation, which is incorporated in one place, and has its principal place of business in another. I mean, how do you defend that? Well, I think that the 1332d2a requires us to prove that we are a citizen of a state different than the citizenship of at least one member of the class. And I think we've done that, Your Honor. No one disputes that we are a citizen of Delaware by way of our Delaware incorporation. And no one disputes that at least one member of the putative class is not a citizen of Delaware. I think the cases... Mr. Wang, under your analysis, couldn't every corporation in America that has dual citizenship remove every case? There would always be diversity under your analysis, correct? Well, not quite, Your Honor. I think that under CAFA, you'd still need to satisfy the amount of controversy requirement, the $5 million amount of controversy. No, I understand that. There'd always be diversity of citizenship, correct? There would... The minimal diversity point would be satisfied. But that said, there are other requirements. Okay. And so back to Judge Sutton's point, Congress legislated against the backdrop of our case law. When you look at the text in the statute, it's identical to what had always been there in 1332a1. And they use different again. So why... I'm not sure I follow. Why would that be... Why should we change the definition in a case of first impression when every circuit has gone the other way? Well, Judge Lepar, I think that if Congress wanted to, it could have adopted a very clear reading to preclude federal jurisdiction in cases like this. It could have said, quote, when any member of a class of plaintiffs is a citizen of a state that defendant is not a citizen of. That's not what the statute says, though, Your Honor. And when Congress enacted CAFA, as you've noted, it knew about corporate citizenship. It knew about dual citizenship. And instead of... But it knew about corporate citizenship, and it knew that we allowed... We remanded cases where the principal place of business... Imagine this. Kentucky plaintiff, citizen corporation, citizen of Delaware with principal place of business in Kentucky. We always remand those cases in just an ordinary case more than 75,000. It used the identical language when it added CAFA, correct? That is correct, Your Honor. Well, I mean, just to be clear, I mean, I'm focused. This is Judge Sutton. I'm Judge Lepar's point. I mean, the language is very similar, right? It refers to different citizen of a state different from any defendant versus citizens of different states. But I just want to understand, are you arguing that that difference in language makes a difference here? Or is your real point, no, really D2A is for all material purposes the same as A1, but what shifts things is the underlying purpose. Is that the way you're arguing this? I think that's sort of the flavor, Judge Sutton. And I think just to just expand on that point a little bit, I think A1 doesn't necessarily say complete diversity, but that's a requirement that's been interpreted over time by case law. And I think here with respect to D2, Congress clearly enacted CAFA in order to expand federal jurisdiction. And it wanted to expand it through minimal diversity, not through complete diversity. And I think that that's why we would read the statute in context in light of the statutory purpose to embrace situations like the present one. Now, Your Honor, I think as you have noted, the district court did stake a minority position on this. And if you were disinclined to affirm on this particular basis, you could nonetheless affirm the district court's decision by looking at the citizenship and the definition of the putative class. As we've noted in our brief, plaintiff here seeks to represent, quote, a class defined as all persons in the state of Tennessee who purchased prescription pet food manufactured by Mars. As the district court noted, and as the weight of authority has also observed, a class definition- Mr. Wayne, can I, I'm sorry to interrupt, but in paragraph 11 of their complaint, they say it's strictly limited to the citizens of Tennessee. So I understand your point, and it's a valid one that residency and citizenship are different and that their complaint is somewhat sloppy, but don't we, what about this paragraph 11 specifically that specifically limits the class? Well, Judge Lepar, I think that this case is really on all fours of the Gallagher case that we cited in our brief, which says that because plaintiff is the master of the complaint, you look at the class definition. You don't look at other parts of the complaint to try to limit or expand the class. I think in addition- But you have to read the complaint as a whole, right? Well, not necessarily, Your Honor, but even if you did want to read the complaint as a whole, I would point you to the fact that we think plaintiff has really conceded this point. And if I could read very briefly from page 11 of his motion of remand, where he states, while plaintiff's allegations do not expressly state that the class members are located in Tennessee with an intent to stay there, this oversight presents a technical or superficial problem. It's not a mere technical or superficial problem. This is the same type of problem that in cases like the Cuyo, in cases like the Turner case, and in cases like Broadway Grill, the courts found precluded application of the home state exception and in fact created minimal diversity. And I think under the weight of that authority, plaintiff's own class definition creates the minimal diversity necessary for federal jurisdiction. Your Honor, on this point, we would actually also- Mr. Wang, can I ask you about that? I'm sorry, again, to interrupt. So you flipped on us to the home state exception. And tell me if I'm looking at this right. When I'm looking at whether there's minimal diversity, not the home state exception, you bear the burden. When you flip it to the home state exception, they bear the burden. And if that matters, then it seems to me you have to show us that someone is a citizen of another state on your half of the bargain. And that comes first. Am I looking at that right? That's correct, Judge Tapar. And I think sort of in the vein of your question, I think courts such as the DiCuio Court and the Turner Court and the Broadway Grill Court sort of noted this point that sometimes a court, just by the face of the complaint, by the definition itself, can determine that it's reasonable to conclude that there's one non-tenant or one citizen outside the forum state. I think that the DiCuio case is especially instructive on this point, Your Honor, where that involves Turner cartridges purchased in New Jersey. And the court essentially stated that, you know, it's a reasonable quote to conclude that at least one purchaser was not a resident of the state. Many people and companies from the neighboring state of Pennsylvania, New York, travel into New Jersey to buy consumer goods. That same- I guess I'm nervous, Mr. Wang, about making any assumptions when it comes to our jurisdiction, when it's as simple, I mean, you could take discovery on this point in state court, presumably, or some say even in federal court, although I would have issue with that, but in state court, and then remove the case once you've found that out. Why wouldn't that be the proper way to handle this? Well, Your Honor, I think you point out that it is possible that we could sort of engage in some further fact-finding on this, but we think the face of the complaint is clear. I think in light of the fact that Tennessee is bordered by eight states, in light of the fact that we've pointed out that pet food is a fairly transient product, in light of the fact that there are many residents of Tennessee, such as college students or military personnel that have no intent to stay there, in light of these facts, I think it's reasonable to conclude that at least one person, one person in the last three years has purchased prescription pet food in the state of Tennessee, who is not- Mr. Wang, this is Judge Sutton. I'm just trying to make sure I understand this, and it's really following up on Judge Lepar's question, and my question is for your friend on the other side. So let's say hypothetically it does go back to state court. How does that work? I mean, so one, I heard you referring to discovery, which might determine whether the complaint refers exclusively to Tennessee citizens, and you're suggesting that if it turns out it applies outside of that, you could then remove it, remove it then, and I guess would the same be true if suddenly royal canine comes into the case? Is that how it works? I just don't, I'm embarrassed to say I don't know. So a case gets back to state court, it's there, we now have more discovery, which potentially becomes the predicate for pulling it back into federal court? No, Your Honor, we would oppose remanding this case to state court. Largely on the fact- No, I understand, I got that, I got that. I was trying to, that's why I said hypothetically it goes back to state court. I just don't understand this part of removal jurisdiction. Is it really possible to remove it yet again? Well, I think that the case law is a little bit unclear on that point, Judge Sutton, and I think part of that is sort of the unique circumstances involved in this case. I mean, very rarely would you have a plaintiff suing a company that he didn't buy a product from and refusing to sue the company that he did buy a product from. That said, I think there's some discretion here, and I think the reason that we would urge this court to affirm the district court's decision is that when you go through and play out all the, play out all the points here, it's more likely than not that we'll find that one person in the fugitive class is not a Tennessee citizen. It's more likely than not that you'll find that Royal Connin is the proper defendant. It's more likely than not, we believe that- Mr. Lang, Delta New Rules, and they're not very new anymore, but if I remember this correctly, Delta New Rules allow you, if it wasn't removable at the time you removed it, doesn't the clock start ticking upon receipt of information or paper that allows you to determine it is removable? So for example, if we were to remand and say no diversity, you get back and take discovery and discover that someone is actually a citizen of Arkansas that's going to the University of Tennessee to go to your hypothetical, and it is a citizen of the state of Arkansas, it would allow you to remove within a certain time period of discovering that. Isn't that accurate? That's true. I think that that's sort of the thrust of the Grazer case, Your Honor. Your Honor, I see that my time is nearly expired. So if I could, I just want to make one final point, if that's all right. I just want to note that in plaintiff's reply brief, he notes that we contended or essentially conceded that he was a citizen of Tennessee. And I just want to point out that I don't think that our papers bear that point out. On paragraph 10 of our notice for removal, we very clearly state that he's a resident of Tennessee. We discuss the residency citizenship distinction on pages 14 and 15 in opposing his motion to remand. And before this court on page one of both opposing his permission to appeal and opposing his primary brief, we again point out that he's a resident of Tennessee. And if there are no further questions from the court, Your Honor, we would respectfully request that this court affirm the district court's decision denying plaintiff's motion to remand. Thank you very much. Mr. Barrett. Oh, thank you. I'll be brief, Your Honors. On the home state exception, I mean, we have specifically limited our class to strictly limited to the citizens of Tennessee. And Your Honor's right, it was a little sloppy pleading and sloppy draftsmanship, no question about that. It should have been written better. But that doesn't mean that its effect is not valid. I mean, the class, instead of putting it in one paragraph, we put it in two and put it in two different spots and again, poorly drafted. But the class in our complaint is strictly limited to the citizens of Tennessee. The fact that the, I mean, of course, the plaintiff is a resident of Knox County, Tennessee. And in the paragraph 11 and 83, paragraph 11 being the strictly limited to the citizens, paragraph 83 being the one that is the quote unquote class definition, it can be and should have been read together as a whole. The district court didn't do that. She basically picked one paragraph over another. And that's not, we don't think that's the proper way to construe a complaint. You take it all, you read it all, and you view it as a whole, and then you decide if there's any doubts in favor of remand or not. And so we just don't think she did that. We don't think her assumption she made, and really, the whole discussion about whether or not out-of-state people were gonna come buy dog food and all that, we think the district court sort of penalized us for not proving all that up. We didn't think we had to. We limited our class to citizens of Tennessee. And what better proof could we present? I mean, I could present evidence that X number of people living on the border, and a lot of people driving to Knoxville, you know, UT students, that kind of thing. But that's not as good as specifically limiting the class in our complaint. So we, and the judge just didn't take that, didn't take that really into, didn't put a lot of weight in that, and so we think she was wrong about that. As to the Royal Canine Rule 19 argument, just I wanna make three quick bullet points. One, jurisdiction is determined, and that's what we're talking about, jurisdiction at the time of the filing. You look at the complaint that's on file. Royal Canine wasn't sued in the party. It doesn't matter if a defendant thinks they ought to be in the case. They're not. It just doesn't matter. You know, and the proper, and the third is, if the defendant, in this case Marge, thinks that we were incorrect, they have reasons to get out, the proper procedural device is a motion to dismiss in state court, and they have every right to do it, and they'll brief it as well as, you know, in state court as they will in federal, so they're not harmed in any way. So those are all the points I have, and I'll be happy to, and we think that. This is Judge Sutton. My curiosity's getting the best of me. You keep referring to it as Royal Canine, but it doesn't have an E at the end. It seems like you need to mandatorily join. Well, then maybe I've been mispronouncing it to myself. Okay, all right. Well, I'm just curious what the right pronunciation is. Well, if I'm wrong, I apologize. I certainly didn't mean that to be. I don't think it's dispositive. I hope not, golly. I'm gonna leave that to Mr. Wang. He can correct me right now if I'm wrong, and I probably am. It is Royal Canine, Your Honor. Canine, I apologize. Well, that's sort of odd, but anyway, we appreciate the argument both of you have given, and we will consider the case carefully. Thank you. Thank you, Your Honor. Thank you.